**Mrs. Winifred POWELL et al.**

v.

**BRANTLY HELICOPTER CORPORATION.**

**Civ. A. No. 6522.**

United States District Court, E. D. Texas, Beaumont Division.

June 27, 1975.

W. Douglas Matthews, Houston, Tex., Windle Turley, Dallas, Tex., for plaintiffs.

Richard H. Caldwell, Frank J. Knapp, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for defendant.

William A. Conners, Jr., Houston, Tex., for intervenor, Southern Marine & Aviation Underwriters.

Lawrence Louis Germer, Orgain, Bell & Tucker, Beaumont, Tex., for intervenor, Zurich-American Ins. Co.

## MEMORANDUM OPINION

STEGER, District Judge.

The Intervenor herein, Southern Marine & Aviation Underwriters, is seeking by way of subrogation and indemnity from the Defendant, Brantly Helicopter Corporation, certain sums paid under two policies of insurance issued by it to Rotor-Craft, Inc. and Frank Babcock. One policy covered physical damage to the Brantly helicopter involved in this suit, and the other was a liability policy covering personal injuries and property damage arising out of the use of this helicopter by the insured. The details of these policies and the claims of Southern Marine will be discussed after a brief review of the facts of this case and its procedural history.

## BACKGROUND

On March 30, 1968, Bruce Holmes Powell, a NBC-TV cameraman, was riding as a passenger in a Brantly Model 305 helicopter in Orange, Texas, filming the Waggoner Carr for Governor campaign. This helicopter was owned by Frank Babcock, who leased it to a firm named Rotor-Craft, Inc., which was based in Houston. On the occasion in question the helicopter was being piloted by Kenneth J. Harmon, an employee of Rotor-Craft.

On that date, after Harmon and his passengers took off from an enclosed area and climbed to a height of approximately 100 feet, the helicopter began to spin to the right so that Harmon was forced to make an emergency landing near a railroad platform. Just after touching down, the right landing gear broke under the stress, causing the helicopter to roll to the right. When this happened the rotor blades began striking the ground, one broke loose and crashed through the canopy, striking Bruce Powell and fatally injuring him.

As a result of Mr. Powell's death his wife and children filed suit in the United States District Court for the Northern District of Illinois, in October, 1968, naming Frank Babcock, Kenneth Harmon, Rotor-Craft, Inc., Lear Jet Industries, Inc., and Avco Lycoming Corporation as defendants. This suit was subsequently dismissed on jurisdictional grounds.

After this dismissal suit was refiled in Illinois state court and this ended with a voluntary dismissal on August 13, 1969. Mrs. Powell received a settlement paid by Rotor-Craft's insurer, Southern Marine, in the amount of $55,-000.00, which was to be divided between herself and Brian F. Powell, her minor son. Covenants not to sue were executed by Mrs. Powell, Bruce Powell, Jr. and Pamela Powell in favor of Frank Babcock, the pilot Harmon, Rotor-Craft and Waggoner Carr. These covenants

specifically reserved rights against all other persons and corporations.

Thereafter, on December 26, 1969, Mrs. Powell and her children instituted a diversity suit in this district and division against the Defendant herein, Brantly, and several other defendants, some of which were named in the original federal court suit in Illinois and others which were omitted. In the original complaint, the Plaintiffs alleged that the Defendants were negligent in the conception, design, manufacture, assembling and distribution of the helicopter in question.

Brantly was not served with this complaint until approximately one year later and they didn't file answer until February 1, 1971. In the meantime Southern Marine, the insurer for Frank Babcock and Rotor-Craft, filed a motion to intervene and four days later on May 22, 1970, Southern Marine was allowed to intervene. The Defendants who previously answered in the case filed a Motion for Reconsideration strongly opposing the intervention. In opposing the intervention the Defendants raised several points, principally that the action by Southern Marine was barred by the Texas two year statute of limitations, Article 5526, *Vernon's Ann.Civ.St.* However, on January 12, 1971, the Motion for Reconsideration was denied and Southern Marine was allowed to intervene under Rule 24(b) (2), Fed.R.Civ.P. Brantly did not file an answer in the case until after the intervention was allowed and the Motion to Reconsider was denied, and they were not served with a copy of the intervention until approximately seven months after the original motion to intervene was granted.

In its plea of intervention, after adopting the Plaintiffs' allegations, Southern Marine alleged that the Defendants were liable for $40,344.38, which represented a sum they paid to Rotor-Craft under hull damage policy. This amount was the difference between the fair market value of the helicopter before the accident (claimed to be $44,000.00) and the reasonable salvage value after the accident and the policy deductible.

The main case between Mrs. Powell and Brantly went to trial on February 4, 1974, on Plaintiffs' Amended Complaint naming Brantly only and alleging causes of action based on negligence and strict liability. The other Defendants originally named had been previously dismissed on motion by the Plaintiffs. Some four days prior to the commencement of this trial, Southern Marine filed an Amended Plea of Intervention also naming Brantly only. In addition to the property damage claimed previously Southern Marine now asserted the $55,000.00 against Brantly that it had paid in settlement to Mrs. Powell in the Illinois state court case. Additionally, Southern Marine asserted numerous small property damage settlement payments it made to people around the crash site in Orange. Brantly promptly filed an answer to this intervention denying the claims of Southern Marine and setting up the two year statute of limitations as an affirmative defense. At a conference in chambers, it was decided that the intervention would be severed from the main lawsuit and evidence would be presented at a later date should the jury find in favor of the Plaintiffs. The case between the Plaintiffs and Brantly was submitted to the jury on a products liability theory and on February 8, 1974, the jury returned a general verdict for the plaintiffs against Brantly for damages in the total amount of $355,000.00 actual and $10,000.00 punitive. Thereafter, the action between Southern Marine and Brantly was tried before the Court on May 27, 1975, and briefs were submitted by both parties.

After a careful study of these briefs, and the evidence presented at trial, as well as the applicable authorities, the Court is of the opinion that all of the relief prayed for in the Amended Plea in Intervention should be denied and judgment should be entered in favor of Brantly on this last remaining portion

of the case. The reasons for this decision will be set forth below.

### HELICOPTER DAMAGE

On this portion of the intervention, Southern Marine contends that because the jury found Brantly's helicopter to be in a defective condition unreasonably dangerous on the occasion in question, they are entitled to the $40,344.38 they paid to Rotor-Craft, Inc. under the hull damage policy. Brantly's primary defense is the statute of limitations, aside its contention that this is an improper Rule 24(b)(2) intervention.

At the time of the crash Rotor-Craft had an Aircraft Hull Policy issued by Southern Marine which covered direct physical loss or damage to the 1965 Brantly Model 305 helicopter in the total amount of $44,000.00. There was a $4,400.00 deductible if the loss occurred while the rotors were in motion, as they were in this case. Pursuant to the terms of this Policy, Rotor-Craft duly executed a proof of loss claiming that a total loss of the helicopter occurred on March 30, 1968. Subsequently, Rotor-Craft submitted a supplemental proof of loss for F.A.A. charges, bringing the total amount claimed to $40,344.-38. The Intervenor paid the insured this amount on June 15, 1968, and became subrogated to the rights of Rotor-Craft under the terms of the policy.[1]

As noted previously, the Defendant's principal contention is that this intervention claim is barred by the statute of limitations. At the outset, it is clear that a federal court in a diversity case must apply the applicable statute of limitations of the forum state. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). A federal court may not give a cause of action a longer life than it would have in state court. *Anderson v.*

*Papillion*, 445 F.2d 841 (5th Cir. 1971); 3 *Moore's Federal Practice* para. 14.09 (1974). Here, the applicable state statute of limitations on this subrogation claim is two years. *Sheppard v. State Farm Mutual Automobile Ins. Co.*, 496 S.W.2d 216 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Fishel's Fine Furniture v. Rice Food Market*, 474 S.W.2d 539 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ dism'd).

The Court in the *Fishel's Fine Furniture* case concisely summarized the law applicable to this subrogation claim:

"... Subrogation 'is a doctrine of equity a substitution of another person in the place of the creditor so that the person in whose favor it is applied succeeds to the rights of the creditor in relation to the debt.' *Platte v. Securities Inv. Co.*, 55 S.W. 2d 551 (Tex.Com.App.1932, jdgmt adopted). One entitled to subrogation must work through the creditor whose rights he claims. *Insurance Co. of No. America v. Fredonia State Bank*, 469 S.W.2d 248 (Tex.Civ.App. —Tyler 1971, no writ); 83 C.J.S. Subrogation § 14, p. 612 (1953). If the subrogor has no rights, then the subrogee can have none. *Platte v. Securities Inv. Co.*, supra; *Pugh v. Clark*, 238 S.W.2d 980 (Tex.Civ.App. —Galveston 1951, writ ref'd n. r. e.). 'The insurer's right of subrogation is derived from the rights of the insured, and is limited to those rights, and there can be no subrogation where the insured has no cause of action against the defendant.' *International Ins. Co. v. Medical-Professional Bldg.*, 405 S.W.2d 867, 869 (Tex.Civ.App.— Corpus Christi 1966, writ ref'd n. r. e.)." 474 S.W.2d at 541.

In determining whether this claim is barred by the statute of limitations an examination of the relevant

---

1. "9. SUBROGATION.
   "In the event of any payment under this Policy, the Underwriters shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

dates is in order. The accident occurred on March 30, 1968. Southern Marine paid for the damage to the helicopter on June 15, 1968, and their Motion to Intervene in this case was filed on May 18, 1970. An intervention such as that asserted by Southern Marine is commenced when the motion to intervene is filed. 3B *Moore's Federal Practice* para. 24.12 [1] n. 7 (1974). Therefore, the filing of Mrs. Powell's complaint would not toll the statute of limitations for Southern Marine.

This being so, the issue is squarely presented: Does the statute of limitations begin to run on this subrogation claim from the time of the occurrence causing the insured's loss or does it run from the time of the payment to Rotor-Craft? As may be seen from the dates just cited, if it begins to run from the time of the accident, the Intervenor's claim is barred, but if it is from the time of the payment, it is not barred by the statute of limitations.

The opinions in the *Fishel's Fine Furniture* and *Sheppard* cases cited above provide the answer. The intervention for sums paid for damage to the helicopter is time barred. In *Fishel's*, the insured sustained a fire loss on August 7, 1967, due to a fire at an adjoining store, Rice Food Market. Some three months later Fishel's sued its own insurance company, Mutual of Wausau, for their damage and they settled the case with Mutual on April 14, 1970. Thereafter, Mutual brought suit on April 9, 1971, against Rice for the sums paid to their insured for property damage. The sole question was whether the statute began to run from the date of the fire or the date of the settlement. The Court decided that the cause of action accrued at the time of the fire and since the insurer's rights of subrogation are derived from the rights of the insured and he has no greater rights than the insured, the action was barred. As in the present case, the insurance company cited certain workmen's compensation cases for authority that the

statute did not begin to run until they paid the settlement. The Court quickly disposed of this argument by saying that these authorities are inapplicable because under the workmen's compensation law, the tolling of the statute is statutory. *Fishel's Fine Furniture v. Rice Food Market*, 474 S.W.2d at 541.

The *Sheppard* case cited previously was somewhat more complicated than *Fishel's* but the principles are equally applicable to the claim by Southern Marine. In that case the insured driver, Billy Johnson, and his wife and child had an accident with an uninsured motorist named Sheppard on October 17, 1968. About a year later on December 31, 1969, the Johnsons sued Sheppard but they did not serve him until the two years had passed. However, within two years from the time of the accident State Farm, the Johnson's insurer, intervened in the case asserting a sum against Sheppard that it had paid to Johnson for property damage to his car. However, State Farm did not get service on Sheppard until five days after the statute of limitations had run. In February, 1971, the Johnsons filed an amended complaint naming State Farm as a defendant under the uninsured motorist provision and at trial they took a non-suit as to Sheppard. The Court, on a finding of liability against Sheppard rendered judgment against State Farm and in favor of the Johnsons and gave State Farm a judgment in an equal amount over against Sheppard.

The Court of Civil Appeals affirmed the judgment against State Farm, but reversed the judgment against Sheppard except for the amount awarded for the minor child's damages. The Court rejected the insurer's argument that the statute of limitations should not begin to run until Sheppard was found liable, and found that as subrogee of the adult plaintiffs' cause of action against Sheppard, they were barred by the statute of limitations. As in *Fishel's*, supra, the Court rejected the at-

tempt by State Farm to analogize their claim to those arising under the workmen's compensation laws.

▆ These recent cases conclusively show that the subrogation claim of Southern Marine for damage to the helicopter must be denied because it is barred by the two year statute of limitations. Southern Marine has no greater rights against Brantly than Rotor-Craft, and the statute of limitations began to run on the cause of action on March 30, 1968, the date of the accident. The Motion to Intervene was not filed until more than two years had passed, on May 18, 1970. Therefore, the claim for property damage to the helicopter is time barred.

### PERSONAL INJURY AND PROPERTY DAMAGE

As the Court has previously stated, Southern Marine issued a liability policy to Rotor-Craft and Frank Babcock covering personal injuries and property damages arising from the operation of the Brantly helicopter. The policy provided $2,000,000.00 coverage for property damage claims and bodily injury claims that the insured became "legally obligated to pay."[2]

The insurer paid several sums on behalf of Rotor-Craft under the liability policy. By far the largest sum was the $55,000.00 paid on August 22, 1969, to Mrs. Powell for her and her minor son, but there were other claims that were paid during late 1968, through April of 1969. All of these claims were paid on the recommendation of an adjuster and the submission of a proof of loss by persons claiming injury. It never judicially determined by any Court that Rotor-Craft was liable to Mrs. Pow-

ell or any of the other claimants. Further, Mrs. Powell did not assign any of her cause of action to Southern Marine or its insured, Rotor-Craft, when she executed the covenant not to sue.

▆▆ Southern Marine is asserting these claims against Brantly by way of common law indemnity. As such, the statute of limitations would commerce running when Southern Marine paid the money to settle the claims. 3 Moore's Federal Practice ¶ 14.09 (1974); Annot., 57 A.L.R.3d 867, 884 (1974). Because this action is in the nature of an implied contract arising out of a tort the applicable statute of limitations would appear to be two years. Littlefield v. Scott, 244 S.W. 824 (Tex. Civ.App.—Beaumont 1922, err. ref'd); 30 Tex.Jur.2d Indemnity § 19 (1962).

▆ Of course, since the amended intervention was filed over four years from the time the settlements were paid, these claims would be barred even by the four year statute of limitations, unless the first motion to intervene tolls the running of the statute of limitations. In determining this question this Court must look to the law of Texas because if the additional claims would be time barred if asserted in state court, then a federal court may not entertain them. See Ragan v. Merchants Transfer and Warehouse Company, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); Anderson v. Papillion, supra.

▆ It is the opinion of this Court that under the prevailing law in Texas the initial plea of intervention would not toll the running of the statute of limitations on the amended claims and therefore, they too are barred. Under the applicable state stat-

2. "COVERAGE D—SINGLE LIMIT—BODILY INJURY (INCLUDING PASSENGERS) AND PROPERTY DAMAGE LIABILITY.
"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at

any time resulting therefrom, sustained by any person, other than the pilot or any member of the crew of the Aircraft whilst acting in their capacity as such, and for damages because of injury to or destruction of property, including loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft."

ute, *Vernon's Ann.Civ.St.* art. 5539b,[3] it is clear that the only way a subsequent amendment can evade the proscription of the statute of limitations is if the original cause of action was not subject to a plea of limitation. See *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex.Sup.1967). The Court has previously found that the original plea was barred by the statute of limitations, therefore, the Court finds that the claims asserted in the amended intervention are also barred.

However, even if the subsequent claims were not time barred, it is the opinion of this Court that the Intervenor failed to carry its burden to prove facts that would entitle it to recover the sums paid to Mrs. Powell and the other claimants. Under the terms of the policy, Southern Marine was obligated to pay all sums that the insured, Rotor-Craft, was "legally obligated to pay." As noted previously, the $55,-000.00 was paid to Mrs. Powell without any finding of liability in the state court suit on the part of Southern Marine's insured, Rotor-Craft. This applies equally to the other settlements paid by Southern Marine.

Because Southern Marine voluntarily settled these claims for Rotor-Craft without having the liability of Rotor-Craft judicially determined, it bears the burden of proving facts which might have rendered the insured liable to the claimants in Illinois. Southern Marine is placed in the anomalous position of showing on one hand that its insured was potentially at fault in the Illinois case, but on the other hand proving in this case that Rotor-Craft was not at fault and that liability lay with Brantly. Furthermore, Southern Marine has the burden of proof to show that all the settlements were reasonable and prudent under the circumstances. See *Fireman's Fund Ins. Co. v. Commercial Stand. Ins. Co.*, 490 S.W.2d 818, 823 (Tex.Sup.1972); *Pan American Gas Co. v. Natural Gas Construction Corp.*, 418 S.W.2d 380 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.); *Gulf, Colorado & Santa Fe Railway Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492 (Tex.Sup. 1958); *Mitchell's Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775 (Tex.Sup. 1957).

The only proof offered by Southern Marine on these points is an investigation report by a man named Joseph Erwin that was made shortly after the accident. This report is simply insufficient to enable the Court to determine that the settlements paid by Southern Marine were reasonable and prudent under the circumstances, or that the insured faced potential liability in Illinois. Therefore, the Court is compelled to conclude that the payments made to Mrs. Powell and the other persons were voluntary and Southern Marine is not entitled to the relief prayed for in its Amended Plea of Intervention.

Judgment will be entered in accordance with the findings made herein in favor of Brantly Helicopter Corporation against the Intervenor, Southern Marine & Aviation Underwriters.

---

3. "Art. 5539b. Limitations as affecting amended and supplemental pleading

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require."